RUSSELL T. NOYES *v.* JOHN SMITH AND WILLIAM R. LEE.

*Master and servant.*

A master is bound to exercise proper care and diligence in the selection of the agencies and instruments with or upon which he employs his servant; and, if he fail to do so, he will be liable to the servant for any injuries he may sustain there from.

The declaration averred that the plaintiff was hired by the defendants to have the charge of, and conduct and run an engine, and that by virtue of said employment, it became the duty of the defendants to furnish an engine that was well constructed and safe, &c., but that they carelessly and wrongfully furnished an insufficient engine; that the insufficiency was unknown to the plaintiff, and "but for want of all proper care and diligence would have been known to the defendants;" and that, while the plaintiff was in the careful and prudent use of said engine, it exploded on account of said insufficiency, and injured the plaintiff, &c. *Held*, on demurrer, that the declaration disclosed a sufficient cause of action.

ACTION ON THE CASE. The declaration was as follows.

"In a plea of the case, whereupon the plaintiff declares and says, that heretofore, to wit, on the 11th day of November, 1853, and for a long time before that time, the defendants were in the possession of the Vermont Central Railroad Company's track, and of all engines, locomotives, cars, and other furniture, which had previously belonged to the Vermont Central Railroad Company, a corporation chartered and organized by and under a law of the legislature of the state of Vermont, and the defendants on that day, and long before, were and had been common carriers of freight and passengers on said road; and that on the 11th day of November, 1853, the plaintiff was in the employ of the defendants, hired by them, as an engineer, to have charge of and conduct and run an engine on said road, for the purpose of transporting passengers and freight on said road, and had for a long time before been such hired servant of the defendants, in the capacity of engineer,—and that by virtue of said employment of the plaintiff by the defendants, as aforesaid, it became and was the duty of said defendants to furnish an engine for the plaintiff to conduct and run, as it was his duty to do, that was well constructed and safe to the engineer, with the use of proper skill on his part. Yet the defendants, disregarding this duty, to wit, on the 11th day of November, 1853, carelessly and wrongfully gave to the plaintiff to use and conduct in drawing freight on said road, an engine which had not before been con-

ducted by or known to the plaintiff, which was insufficiently stayed and bolted around the fire box, and insufficient in divers parts; insomuch that it greatly endangered the life of the engineer who ran it,—all which was unknown to the plaintiff, and all which, but for want of all proper care and diligence, would have been known to the defendants. And the plaintiff avers that while in the careful and prudent use and management of said engine, on his part, on the 11th day of November, 1853, on said road, said engine exploded from the imperfection and insufficiency aforesaid, and by the explosion, the plaintiff was so torn and scalded, that he hitherto, since that day, hath been and always will be a cripple, and wholly unable to work, and hath been put to great expense for doctors and nurses, to wit, $1,000, whereby and by reason of all which, an action hath accrued to the plaintiff to have and recover his said damages, and all he hath lost from the causes aforesaid, to his damage," &c.

To this declaration the defendants demurred, and the county court, September Term, 1855,—POLAND, J., presiding,—adjudged the declaration insufficient. Exceptions by the plaintiff.

*P. Dillingham* and *H. Carpenter* for the plaintiff.

This declaration does not present the same question that is decided in *Priestly* v. *Fowler*, 3 Mees. & Welsb. 1; *Farwell* v. *B. & W. R. Co.*, 4 Met. 44; *Maury* v. *So. Car. R. Co.*, 1 McMullan 385. These and many other similar cases determine merely that one servant cannot recover against his employer for injuries occasioned by the negligence of his co-servant, for the reason that all obligation from the master arises, expressly or by implication, from the contract.

We insist that there was, by virtue of this contract of hiring between these parties, an implied warranty that the defendants would furnish the plaintiff with an engine to conduct that was reasonably safe and well constructed; and that, failing to do this, they were liable to the plaintiff for his injuries sustained by reason of that neglect.

It is a legal inference, arising from the contract of hiring, that the master or employer shall employ, as other servants, men reasonably skilled in their particular business, and such as have no

known bad habits, such as intoxication, and the like.   5 Exch. 354; 6 Barber 231 ; 1 Amer. L. C. 620, 3 Ed.; 10 Mees. & Welsb. 109 ; 12 Adolph. & Ellis 737.

*Peck & Colby* for the defendants.

The question here presented has been *discussed* and the right of action *denied,* in cases where the subject came *collaterally* before the court.   This was so in *Ryan* v. *Cumberland Valley R. Co.,* Penn. Sup. Ct. 1854; Liv. L. J., Apr. 1855.   And our courts have repeatedly, as in that case, held employers exempt from liability for injuries occasioned to one servant by the carelessness of another servant, that being a *risk* voluntarily incurred as an incident to the employment.     *Hager* v. *West. R. Co.,* 3 Cush. 270 ;  *Farwell* v. *Boston & Worcester R. Co.,* 4 Met. 49 ;  6 Barbour 231 ; 15 Barbour 574;  *Brown* v. *Maxwell,* 6 Hill 592 ; *Albro* v. *Agawam Canal Co.,* 6 Cush. 75.   And the same principle will defeat the plaintiff's action here, for if the master is liable for having a defective machine in his service, it would seem he *should* be liable for having a careless or incompetent servant.

But in England the question has been twice decided.     *Priestly* v. *Fowler,* 3 Mees. & Welsb. 1 ;  *Couch* v. *Steele,* 24 Eng. L. & Eq. 77.

The opinion of the court was delivered, at the circuit session in September, 1856, by

ISHAM, J.   This case comes before the court on a general demurrer to the declaration.   The plaintiff, it is averred, was injured by the explosion of a locomotive engine, on which he was employed by the defendants, as engineer.   It is admitted that the engine was insufficiently stayed or bolted around the fire box, and that it was also insufficient and unsafe in other respects, but that both parties were ignorant of those defects, and had no notice in fact that it was in an unsafe or insecure condition.   That fact is directly averred in relation to the plaintiff, and the defendants are not charged with any such notice by any averment in the declaration.   It is averred, however, that these defects would have been known to the defendants, but for the want of all proper care and diligence on their part.   The inquiry arises, whether the facts stated are sufficient to

enable the plaintiff to recover; it being admitted that the plaintiff was in the exercise of proper skill and diligence when he was injured.

The general rule seems to be well settled by the authorities, that there is nothing growing out of the mere relation of master and servant that raises the duty stated in the declaration. When there is *no actual notice of defects* in an engine of that character, and *no personal blame* exists on the part of the master, there is no implied obligation or contract on his part that the engine is free from defects, or that it can safely be used by the servant. The law imposes no such obligation. There are risks and dangers incident to most employments, and, especially is this true, in relation to such services as those in which the plaintiff was engaged. Those risks the parties have in view when engagements for services are made, and in consideration of which the rate of compensation is fixed. In all engagements of that character, the servant assumes those risks which are incident to his service, and, as between himself and his master, he is supposed to have contracted on those terms. If an injury is sustained by the servant, in that service, it is regarded as an accident, a mere casualty, and the misfortune must rest on him. That is the doctrine, and the extent of the cases, to which we were referred by the defendant's counsel. In the case of *Priestly* v. *Fowler*, 3 Mees. & Welsb. 1, it was held that the master was not liable to his servant for an injury sustained by him, from the breaking down of an overloaded van. Lord Abinger in that case observed, that " from the mere relation of master and servant " no contract, and therefore no duty, can be implied on the part of " the master to cause the servant to be safely and securely carried, " or to make the master liable for damage to the servant, arising " from any vice or imperfection unknown to the master, in the car- " riage or in the mode of conducting or loading it." The same doctrine is sustained in *Seymour* v. *Madox*, 5 Eng. L. & Eq. 265, and in the case of *Couch* v. *Steel*, 24 Eng. L. & Eq. 77. The principle, which is now well settled in England and this country, " that a master is not liable to his servant for an injury occasioned " by the negligence of a fellow servant, in the course of their com- " mon employment," is founded upon the same reason. The liability of one servant to be injured by the carelessness of another, is

a risk which the servant has assumed, as an incident to his employment, and for which the master is not responsible. This general rule, however, has no application to either of those cases when there has been *actual fault or negligence* on the part of the master, either *in the act from which the injury arose, or in the selection and employment of the agent which caused the injury.* The case of *Couch* v. *Steel,* above cited, recognizes both the general rule and that qualification. In that case it was held, that, as there was no *actual knowledge* of the defective condition of the ship, and *no personal blame* was imputed to the owner, a seaman could sustain no action for an injury sustained in consequence of its unsafe condition. The language of the court implies, that, had there been *actual knowledge or if personal blame* had otherwise been imputed to the ship-owner, a liability would have existed. The case of *Hutchinson* v. *Railway Company,* 5 Wels., Hurls & Gord. 352, is a strong illustration of the principle. In that case, Alderson, B., after recognizing the general rule, that a master is not, in general, responsible to one servant for an injury occasioned to him by the negligence of a fellow servant, observed, that " this must be taken " with the qualification *that the master shall have taken due care not* " *to expose his servant to unreasonable risks.* The servant," he observed, " when he engages to run the risks of his service, including " those arising from the negligence of fellow servants, has a right " to understand that the master has taken reasonable care to pro-" tect him from such risks, by associating him only with persons of " ordinary skill and care." There can be no doubt in relation to the doctrine of those cases, or the general principles on which they are founded. The master, in relation to fellow servants, is bound to exercise diligence and care that he brings into his service only such as are capable, safe and trust-worthy, and for any neglect in exercising that diligence he is liable to his servant for injuries sustained from that neglect. It is not necessary that he should know that they are unsafe and incapable. It is sufficient that he would have known it, if he had exercised reasonable care and diligence. The same doctrine is sustained in this country. 1 Am. L. C. 620; 5 Wels., Hurls & Gord. 357, note ; *Coon* v. *U. & S. Railroad Co.,* 6 Barber 231. There is no distinction in principle between those cases and the one under consideration. Upon the facts admitted

by this demurrer, whatever may be the agent which the master brings into his service, whether animate or inanimate, the master is bound to exercise care and prudence that those in his employment be not exposed to unreasonable risks and dangers;—and the servant has a right to understand that the master will exercise that diligence in protecting him from injury, and also in selecting the agent from which it may arise. It is only such injuries as have arisen after the exercise of that diligence and care on the part of the master, that can properly be termed accidents or casualties, which the servant has impliedly agreed to risk, and for which the master is not liable. The doctrine is not controverted, that the defendants would be liable to the plaintiff for the injury he has sustained, if they had had notice in fact of the defective condition of the engine. It was so expressly decided in the case of *Keegan* v. *Western Railroad Corporation*, 4 Selden 175. There is no propriety, therefore, in saying that the defendants may be relieved from that liability by a want of such knowledge, when it has arisen from their gross neglect: for the neglect is gross, when the fact is, as is admitted by the demurrer, that *but for the want of all proper care and diligence, the unsafe condition of the engine would have been known to them.* We think, upon the facts admitted by the demurrer, the plaintiff can sustain this action, and that the declaration is sufficient.

The judgment of the county court must be reversed, and judgment rendered for the plaintiff.