Hard, Admr. *v.* Vermont & Canada R. R. Co.

ELEAZER R. HARD, *Administrator of the Estate of* ADIN N. FRENCH, *deceased, v.* THE VERMONT AND CANADA RAILROAD COMPANY.

*Railroads. Master and servant.*

The plaintiff's intestate, who was an engine driver on the defendants' railroad, was killed by the explosion of the locomotive which he was running, which explosion occurred in consequence of the neglect of the defendants' master mechanic to keep the locomotive in repair. The duty of this master mechanic was to superintend and direct the repairs of all the locomotives on the defendants' road. The directors of the defendants were not guilty of any neglect in furnishing their road in the first instance with suitable machinery and faithful and competent employees, and they were ignorant of any defect in the locomotive in question. In an action brought by the plaintiff, as administrator of the engine driver, for the benefit of his widow and next of kin, to recover damages for his death, *held*, that the defendants were not liable.

Though it is the duty of a railroad company to exercise all reasonable care in procuring for its operation sound machinery and faithful and competent employees, and though they are liable to their servants for the neglect of this duty, yet, after they have procured such machinery and employees, they are not liable to a servant for injuries occasioned by the neglect of any of his co-servants, employed in the same general business of operating the road, even though the negligent servant in his grade of employment is superior to the one injured.

CASE to recover damages for the death of the plaintiff's intestate, occasioned, as the declaration alleged, by the explosion of a locomotive which the intestate was running as engineer upon the road and in the employment of the defendants, such explosion being alleged to have occurred in consequence of the defendants' neglect. The action was brought by the plaintiff for the benefit of the widow and children of the intestate.

The defendants pleaded the general issue, and the cause was tried by jury, at the March Term, 1859,—BENNETT, J., presiding.

The evidence introduced by the plaintiff tended to show that the plaintiff's intestate was employed by the defendants as an engineer upon their railroad; that on the day of his death he was, as such engineer, running upon the defendants' railroad a locomotive belonging to them called the "John Smith," when the boiler of the locomotive exploded, thereby instantly killing him; that this explosion occurred in consequence of the defective con-

dition of the fire box of the locomotive, which had become cracked; that one Morrill was employed by the defendants as master mechanic, and as such had full charge of the locomotives belonging to the defendants, and had the entire direction what locomotives should run, and when, where and by whom they should be run; that it was his duty to see that all the locomotives used by the defendants were kept in repair; that he was guilty of negligence in allowing the locomotive "John Smith" to be run in its defective condition on the day of its explosion, and that such explosion was not occasioned by any negligence on the part of the plaintiff's intestate.

The evidence introduced by the defendants tended to prove (and the plaintiff's evidence showed nothing to the contrary) that it was no part of the personal duties of the directors of the defendants' corporation to make personal examination into the safety of the locomotives in use on their road, and that none of them had any knowledge of any defect in the locomotive "John Smith" previous to its explosion; that that locomotive was built by makers of high reputation in their business; that locomotives from that manufactory were in general use in the New England States, and were of good reputation; that the locomotive "John Smith" had been in use for some time on the defendants' road previous to its explosion; that Morrill had been master mechanic upon their road for some time previous to the death of the plaintiff's intestate; that he was a skilful and competent man for that post; that it was his duty to inspect and keep in repair all the locomotives used on the defendants' road, and that he was always supplied by them with suitable and sufficient men and materials for that purpose.

The defendants, upon this evidence, requested the court to charge the jury, first, that as it appeared that the defendants used all due care in the selection of locomotives and of proper and skilful persons to examine and repair them, and furnished sufficient and proper materials for that purpose, and that it was no part of the business of the directors of the defendant corporation to make personal inspection of the condition of the locomotives, and that none of them either knew of or suspected any defect in the "John Smith," or any negligence in their employees

having the charge of it, the defendants were therefore entitled to a verdict; secondly, that unless the jury should find, as a fact, that this injury happened from the neglect of the defendant corporation itself, and that the corporation might, by ordinary and reasonable precautions, have known and avoided the cause of the misfortune, the plaintiff could not recover; and that the defendants were not to be charged with negligence constructively, by reason of the negligence of their employees, if, as was not denied by the plaintiff, the company used due care in selecting skilful men and good materials and locomotives; and thirdly, that even if Morrill in this instance was negligent, still, if he was generally a skilful person, and was so regarded by all, the plaintiff could not recover.

The court declined to charge the jury as requested, but, among other things not excepted to, instructed them that if they should find that the locomotive "John Smith" was insufficient and unsafe for use, then it would be necessary for them to inquire whether Morrill was guilty of negligence in suffering it to be run in that condition; that he was guilty of such negligence if the defect in the engine was one which he could have discovered by the use of reasonable care and diligence; that if they should find that he was guilty of such negligence, and that the death of the plaintiff's intestate was in consequence thereof, the defendants were responsible to the plaintiff for such damages as the jury should find were equal to the pecuniary injury which the widow and children of the plaintiff's intestate had suffered by the latter's death, unless the jury should be of opinion that French himself was negligent, and that his negligence had in some way contributed to the cause of his death, in which latter case the jury were told that the plaintiff was not entitled to a verdict.

The jury returned a verdict for the plaintiff for seven thousand dollars.

To the refusal of the court to instruct the jury as requested, and to the instructions given, as above detailed, the defendants excepted.

*George F. Edmunds*, for the defendants, cited *Noyes* v. *Smith*, 28 Vt. 59; *Priestly* v. *Fowler*, 3 M. & W. 1; *Hutchinson* v.

Hard, Admr. *v.* Vermont & Canada R. R. Co.

*York & N. R. R. Co.,* 5 Exch. 343 ; *Wigmore* v. *Jay, ib.* 354 ; *Skip* v. *Eastern Counties R. R.,* 24 Eng. L. and Eq. 396 ; *Wiggett* v. *Fox,* 36 Eng. L. and Eq. 486 ; *Conch* v. *Steel,* 23 Eng. L. and Eq. 77; *Tarrant* v. *Webb,* 37 Eng. L. and Eq. 281; *Carle* v. *Bangor & Piscataquis R. R. Co.,* 43 Maine 269 ; *Farwell* v. *Boston & Worcester R. R. Co.,* 4 Met. 49 ; *Albro* v. *Agawam Canal Co.,* 6 Cush. 75 ; *King* v. *Boston & Worcester R. R. Co.,* 9 Cush. 112 ; *Hayes* v. *Western R. R. Co.,* 3 Cush. 270 ; *Gilshannon* v *Stony Brook R. R. Co.,* 10 Cush. 228 ; *Bassett* v. *Norwich & Nashua R. R. Co.,* 19 Law Reporter 551 ; *Blake* v. *Ferrin,* 1 Selden 48 ; *Coon* v. *Syracuse & Utica R. R. Co., ib.* 492 ; *Sherman* v. *Syracuse R. R. Co.,* 17 N. Y. 153 ; *Boldt* v. *N. Y. Central R. R. Co.,* 18 N. Y. 432 ; *Ryan* v. *Cumberland Valley R. R. Co.,* 23 Penn. 384 ; *Shields* v. *Yonge,* 15 Geo. 349 ; *Walker* v. *Bolling,* 22 Ala. 24 ; *Cook* v. *Perham,* 24 Ala. 21 ; *Madison R. R. Co.* v. *Bacon,* 6 Ind. 205 ; *Honner* v. *Illinois Central R. R. Co.,* 15 Ill. 550 ; *Degg* v. *Midland R. R. Co.,* 1 Hurls. & Nor. 773 ; *Vose* v. *Lancashire, R. R. Co.,* 2 *id.* 648 ; *Griffith* v. *Ludlow,* 38 Eng. Law and Equity 477.

*E. R. Hard* and *J. French,* for the plaintiff.

1. The doctrine established by *Priestly* v. *Fowler,* 3 M. & W. 1, and followed in numerous cases in this country, does not apply to cases where the servant, whose neglect causes the injury, is *superior* in employment to the servant who is injured; *Coon* v. *Syracuse & Utica R. R. Co.,* 1 Seld. 492 ; *Little Miami R. R. Co.* v. *Stevens,* 21 Ohio 415 ; *C. C. & C. R. R. Co.* v. *Keary,* 3 Ohio St. 202.

2. Morrill was not a co-servant with French. The former occupied the position of *agent*; the latter that of servant. In such cases the rule of *Priestly* v. *Fowler* does not apply ; *Wright* v. *N. Y. Central R. R. Co.,* N. Y. Court of Appeals, 1859 ; *Little Miami R. R. Co.* v. *Stevens,* 20 Ohio 415 ; *C. C. & C. Railway Co.* v. *Keary,* 3 Ohio St. 201.

3. In all service there is an implied warranty on the part of the principal of the soundness of the machinery which he puts into the hands of his servant, so far as any unsoundness therein may be discovered by the exercise of proper care and diligence ;

and for injury resulting to the servant from the employment of such unsafe machinery by the master, the latter is always liable, unless the servant himself is guilty of neglect; Redfield on Railways, 386–9; *Farwell* v. *Boston & Worcester R. R. Co.*, 4 Met. 49; *Keegan* v. *Western R. R. Co.*, 4 Selden 175; *Noyes* v. *Smith et al*, 28 Vt. 59; *Marshall* v. *Stewart*, 33 Eng. Law and Eq. 1; *M. R. & L. E. R. R. Co.* v. *Barber*, 5 Ohio St. 541; *Wright* v. *N. Y. Central R. R. Co.*, *ub. sup.*

PIERPOINT, J. This action was brought under the statute of this State to recover damages resulting from the death of the intestate, who was killed by the explosion of the railroad engine " John Smith," owned by the defendants, and while the intestate was running it on their road and in their service.

From the evidence stated in the bill of exceptions, and the charge of the court thereon, it must be conceded that the jury, in order to justify their verdict, must have found that the accident that resulted in the death of the intestate occurred in consequence of the carelessness or unfaithfulness of one Morrill, (who was the master mechanic in the business of running the defendants' road) in the discharge of his duties as such master mechanic, or in other words, that if Morrill had faithfully discharged such duties the accident would not have happened.

The case shows that it was proved upon the trial, and not contradicted, that it was no part of the duties of the directors of the defendants' road to make personal examination into the safety of the engines in use on the road; that the directors had no knowledge of any defect in the engine " John Smith" before the accident; that it was built by makers of high reputation in their business; that such engines were in general use in New England and of good reputation; that it was Morrill's duty to inspect and keep in repair this and the other engines in use on the road; that he was always supplied by the defendants with suitable and sufficient men and materials for that purpose, and that he was a skillful and competent person for the post he occupied; in short, that the defendants were not directly guilty of any act or of any neglect or unfaithfulness in the discharge of their duties that caused, or contributed to produce, the result complained of.

Hard, Admr. *v.* Vermont & Canada R. R. Co.

If then the defendants are to be made liable at all in this case, it must be in consequence of the carelessness or unfaithful conduct of Morrill, in the discharge of his duties as master mechanic.

It is conceded by the counsel for the plaintiffs, in their argument, that the rule of law is well settled, both in England and in this country, that a servant cannot maintain an action against his principal for an injury which he sustains in the service of such principal, in consequence of the carelessness or unfaithful conduct of a fellow servant. Indeed, the doctrine first enunciated in *Priestly* v. *Fowler*, has been strictly adhered to in England from that time to the present. It has been almost universally followed in this country, and is expressly recognized in this State in *Noyes* v. *Smith & Lee*, 28 Vt. 59. And whatever view we may entertain as to the soundness of the reasons on which the rule was originally established, it is now so firmly supported by authority that it would not be wise to overturn it.

But it is insisted that this rule does not apply when the servant whose neglect causes the injury is superior in employment to the one who is injured, or not a fellow servant.

This we think must depend upon the question whether the person injured and the negligent servant are engaged in the same general undertaking or business; whether they are directly engaged in the accomplishment of a common object, to attain which the performance of the duties of each is necessary, and where the performance of the duties of each constitutes a link in the chain of acts that are necessary to produce the desired result.

In the case before us Morrill and the deceased were both engaged in the same general business of running the trains on the defendants' road. It was the duty of one to see that the engines were in a proper state of repair, and to determine what engineers should run the several engines. It was the duty of the other to run the engine of which he was put in charge. Each was independent of the other in the discharge of his own particular duties, and still they were co-servants and fellow laborers in the same general employment, and the nature of the duties of each, and their relation to each other, and the ordinary consequences of the neglect of either upon the other, must have been

fully understood when they entered into the service of the defendants.

It was the duty of the defendants to see to it that the road was equipped with sufficient, suitable and safe engines, all requisite machinery and materials, and of the necessary quality, and men of the knowledge, skill, care and capacity necessary for the full, perfect and faithful discharge of all the duties that appertain to the positions they severally occupied. For the faithful discharge of this obligation they are holden to each and every person whom they employ in the business of running their road. Each has the right to know and feel that he is associated in the common business with none but those who are faithful, careful and competent. The case finds that this duty the defendants had faithfully discharged.

The business of procuring the machinery, materials and men necessary to equip and run the road, is a business different in its character from that of operating the road after it is equipped. Those who are employed by the defendants to discharge this duty cannot be said to be engaged in the same class of business as fellow servants in the same business with those who are employed in operating the road. It is upon this ground that the case of *Wright* v. *The N. Y. Central Railroad Co.*, (on which the plaintiff relies) was decided. The court in that case put their decision expressly on the ground that the company were guilty of negligence through Upton, their agent, in employing Adams, the engineer, who, the court say, was incompetent, and not upon the ground of Adams' negligence.

The court in that case say that Upton, who was the agent of the company to employ the engineers, is not to be regarded as the fellow servant of those whom he employs in the general business.

The cases referred to in the Ohio reports can hardly be regarded as authority to establish an exception to the general rule, inasmuch as they do not recognize and act upon the rule itself. And the learned Judge, who delivered the opinion of the majority of the court in the case of the *Little Miami Railroad Co.* v. *Stevens*, says, that although the facts in the case then under

consideration differ in some particulars from those in the cases where the rule has been recognized, still he concludes that the principle established in those cases would cover the one then before him.

We do not find any case where the existence of the exception to the rule, which is here sought to be engrafted upon it, has been recognized ; and in those cases where the principal has been held liable, it has been on the ground that the business in which the servants or agents were employed was different in its general character and purpose, and where the two, in the regular discharge of their duties, cannot be said to be acting in concert with each other, or in such a way that the duties of each have reference to and directly tend to a common end.

Indeed it is difficult to see where, with reference to the acknowledged rule, a line of distinction can be drawn between the several employees of a railroad company, all of whom are engaged in the active daily occupation of operating the road. The labor of each is indispensable in his particular department to give effect to the joint operations of the whole ; the nature of the business requires the road and the machinery to be kept in constant condition to be used, and it must be constantly used. All who are directly engaged in accomplishing the ultimate purpose in view, that is the running of the road, must be regarded as engaged in the same general business, within the meaning of the rule, and perhaps no term more perfectly expresses their relation to each other and the business, than that of fellow laborers in the work.

But it is insisted that there is " an implied warranty on the part of the principal of the soundness of the machinery which he puts into the hands of his servants, so far as any unsoundness therein may be discovered by the exercise of proper care and diligence." This rule is undoubtedly correct as we have already seen, and as is shown by the authorities cited in support of it. But this is true only of the state and condition of the machinery at the time it is put into the hands of the servant. The principal does not warrant that the servants shall faithfully discharge their duty in keeping the machinery in its original safe condition. To

establish this principle would be to abrogate the rule and make the principal the warrantor of the faithfulness of all the servants.

In view of these considerations we think the defendants were entitled to the direction asked for in their first request.

The judgment of the county court is reversed and the case remanded.