JOEL E. GILMAN *vs.* EASTERN RAILROAD COMPANY.

If a flagman employed by a railroad corporation is an habitual drunkard, and is usually intrusted with the management of a switch, and these facts are known or, by the use of due care, would be known by the officers of the corporation, and he through intoxication fails properly to adjust a switch, whereby an accident happens to a person employed by the corporation to repair its cars, the corporation will be responsible in damages; although due care was used in the original selection of the flagman, and a proper local agent is employed with authority to hire and superintend such servants as may be necessary, and by the rules of the company it is the duty of another person to manage the switch.

If a person employed by a railroad corporation at the time of an accident alleged to have been caused by his negligence was an habitual drunkard, evidence that he was generally reputed to be so in the place where he lived is competent, for the purpose of showing that his intemperate habits ought to have been known to the officers of the corporation.

TORT to recover damages for a personal injury received at East Boston by the plaintiff, who was employed by the

defendants as a carpenter in their repair shop, while being carried on one of their cars.

At the second trial in this court, before *Chapman*, J., after the decision reported in 10 Allen, 233, the evidence as to most of the matters of fact involved in the case appeared to the presiding judge, as he stated in his report, to be irreconcilably contradictory. It appeared that the plaintiff, with other workmen, was going home from his place of work on a platform car, pushed by a locomotive engine ; that shortly before their arrival the car was uncoupled, the speed of the engine slackened, so as to allow the car to get a short distance from it, and a switch at a railroad crossing to be so adjusted as to turn the car off on a side track, and then put back to let the engine proceed on the main track to the engine-house. The plaintiff offered evidence that for several months one Shute had been employed as a flagman and switchman at this crossing, and for a considerable part of the time had had charge of this switch ; that he was habitually and publicly intoxicated while on duty ; that on the day in question he was at the switch, and was so much intoxicated that he could not manage it properly ; that he moved it partially so that it would throw the car off the track ; that the brakeman, seeing this, applied his brake so as to check the car and nearly stop it ; that the engine came up against the car, and gave it a sudden start, by which the plaintiff was thrown down and injured ; and that the defendants' superintendent, who had charge of their business, was frequently at this crossing, and had opportunity to know Shute's habits and character.

He also offered evidence that Shute had the general reputation of being intemperate. This evidence was objected to by the defendants, but was admitted, not for the purpose of showing the fact that he was intemperate, but for the purpose of proving that his habits were well known in the community, in case the fact of his habitual intemperance should be established by other evidence.

The defendants offered evidence that Shute was employed merely as a flagman, and not as a switchman ; that it was no part of his duty to attend the switch ; that their officers had no

knowledge that he ever did take charge of it, or that he was intemperate; that, according to the rules of the corporation, it was the duty of the conductor of the train to get off and take charge of the switch; that when the car came to this crossing on this day it came to a full stop, and so remained until the switch was adjusted; that the engine also came to a full stop, and so remained until the switch was adjusted; that, on seeing that the track was right, the engineer started the engine and purposely ran it against the car in order to start the car forward so that it might run to its proper place beyond the switch, and that the collision was not accidental; and that the plaintiff fell off the car from his own carelessness in standing up on the car when it was struck by the engine.

The defendants requested the court to instruct the jury as follows :

" 1. If, under the circumstances of this case, Shute was employed by the defendants' agents simply to act as flagman to attend a crossing, and not for the purpose of shifting the switch, and if he had never been authorized to shift the switch for trains by any agent having control over him or power to regulate the defendants' business at East Boston, then the defendants are not liable in this case for any carelessness of said Shute in shifting the switch, although he undertook to do it, or did it, in pursuance of a request from one of his fellow-servants.

" 2. If the car on which the plaintiff was riding and the engine pushing it had been stopped, because the flagman Shute failed from carelessness to adjust the switch at the proper time, and after such stopping, and after the switch had been adjusted, the engine was started and pushed so violently against the car as to throw the plaintiff off and injure him, the defendants are not liable for the negligence of said Shute, it being too remote to sustain this action.

" 3. The jury must be satisfied, to justify a verdict for the plaintiff, that the negligence of Shute was the sole cause of the plaintiff's injury; that this negligence was the result of his intemperance; and that the agents of the defendants either knew of such intemperance, or should have known of it by the exercise

of proper care; and if the plaintiff received his injury by rea-son of Shute's negligence under such circumstances, and also of the negligence of the engineer or any other servants of the defendants, then the defendants are not liable in this action.

" 4. If the jury should be satisfied that Shute was negligent from intoxication, and the defendants' agents knew he was in-temperate, or by the exercise of ordinary care might have known it, and such negligence contributed to the injury, still, if the injury would not have been received if it had not been for the negligence of another servant of the defendants, in reference to whom no proof had been offered that he was not a fit and proper person for his place, then the plaintiff cannot recover in this action.

" 5. If, under the circumstances of this case, the officers of the defendants employed a proper person to superintend their busi-ness at East Boston, where the accident to the plaintiff hap-pened, to whom properly and rightfully was committed the duty of hiring and superintending such servants as were necessary to transact their business there, and if this was the usual course pursued by railroad corporations under similar circumstances, and was reasonable, then the defendants would not be liable in this action for an injury received by the plaintiff, being one of their servants, from the carelessness of a fellow-servant, although their agent employed to hire and superintend their servants and employees was negligent in engaging an unfit person as a ser-vant, through whose negligence the injury was received."

The judge did not give the above instructions, but instructed the jury as follows:

" At the time of the accident the plaintiff was in the service of the company; and it is admitted that a servant of the com-pany does not stand in the same relation to them as if he were a stranger. As to him, they are under obligation to use reason-able care in keeping their road and machinery in a suitable and safe condition, so that he can work in safety; also to use rea-sonable care in employing men who are competent to the dis-charge of their duties, so as not to expose him to danger by the incompetency of such servants. [On these points portions of

the opinion of the court in *Snow* v. *Housatonic Railroad Co.* 8 Allen, 444, and of the opinion in the present case, as reported in 10 Allen, 236–239, were read to them.] If the company use reasonable care in employing proper servants, and, through the carelessness of one, another is injured, the company is not liable. And if the accident in this case happened through the carelessness of the conductor, brakeman, engineer or fireman, the defendants are not liable, because there is no evidence tending to show that either of these persons was incompetent or unfit for his position. The plaintiff puts his case on the ground that the accident happened through the carelessness or incompetency of Shute, who, he says, was intrusted with the management of the switch, and was incompetent by reason of intemperate habits. If this is so, the defendants are liable ; for it is as much a breach of duty to keep in their service a drunkard as to run a car with a broken wheel or to keep broken rails on their track. The burden is on the plaintiff to show,

" 1. That Shute was incompetent for the reason alleged.

" 2. That his habits were so well known that it was negligence in the officers of the corporation to keep him in their service ; that the officers are bound to exercise reasonable care, not merely in hiring men at first, but in observing and knowing their course of conduct after they are employed. If Shute was a notorious and habitual drunkard, the question is not whether the officers did in fact know it, but whether, by the exercise of due care, they would know it.

" 3. That Shute was intrusted with the care of the switch by the superintendent, or some officer authorized to employ switchmen. The rules of the company are evidence tending to show that Shute was not to have the care of the switch, but they are not conclusive. If it merely happened that the conductors or other servants of the company employed him to discharge a duty which belonged to them, without the knowledge or fault of the officers, the company would not be liable. But if he managed the switch so frequently that the officers, using due care, would know that he was habitually intrusted with it, then the company is responsible for his conduct in its management.

The plaintiff must prove that he was intrusted with it habit-ually, or so frequently that the officers, exercising proper care, would know the fact that he had the management of it.

" It is admitted that the switch was not properly placed when the car approached ; and on that account the brake was applied and the car was stopped, or its speed was checked. The plain-tiff must prove that Shute was at that time incompetent to manage the switch, and was intrusted with its management ; that, being incompetent, he put the switch in such a position as to expose the car to the danger of running off the track ; that the car was broken up to avoid that danger, and that, while its speed was thus checked, the engine in pursuing its course ran against it accidentally. In this way only can it appear that the collision was a direct consequence of the displacement of the switch. The plaintiff cannot recover unless he proves that his injury was the direct and ·immediate consequence of the act of Shute. If, before the collision, the car and engine came to a full stop, or if the engine came to a full stop, the car would then be in safety, and the danger occasioned by the act of Shute would have ceased, and the plaintiff cannot recover.

" If the engineer ran his engine against the car purposely, as alleged by the defendants, the accident was not a proximate consequence of the act of Shute.

" The burden is also on the plaintiff to prove that he used due care, adapted to the circumstances in which he was placed. The jury are to judge from the evidence what his position was, and whether he was careless in taking such a position."

The jury returned a verdict for the plaintiff, with $9000, dam-ages ; and the defendants alleged exceptions.

*J. G. Abbott & C. M. Ellis,* for the defendants. The plaintiff knew the rules of the road, and any violation of them ; the habits and reputation of Shute ; and any neglect of him or others to do their appropriate work. Knowing these, it was his ·wn choice to remain and take the risk ; or, if he did not know them, he was guilty of at least equal negligence with that of the defendants. *Dynen* v. *Leach,* 40 Eng. Law & Eq. R. 491 *Assop* v. *Yates,* 2 Hurlst. & Norm. 767. *Griffiths* v. *Gidlow,*

3 Hurlst. & Norm. 648. *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429. *Senior* v. *Ward*, 1 El. & El. 385. *Hall* v. *Johnson*, 34 Law Journ. (N. S.) Exch. 222. *McMillan* v. *Saratoga & Washington Railroad*, 20 Barb. 449. *Wright* v. *New York Central Railroad*, 28 Barb. 80 ; *S. C.* 25 N. Y. 562. *Hayden* v. *Smithville Manuf. Co.* 29 Conn. 548. *Fifield* v. *Northern Railroad*, 42 N. H. 225. *Frazier* v. *Pennsylvania Central Railroad*, 38 Penn. State R. 104. *Illinois Central Railroad* v. *Cox*, 21 Illinois, 20. The defendants exercised due care in hiring Shute, and are not guilty of such neglect, in not learning his subsequent reputation, as to render them liable to a fellow-servant. The evidence of such reputation was inadmissible. It was not the defendants' duty to inquire into his general reputation in the community. No officer of the defendants lived in the place where he bore that reputation.

The defendants had fit and competent agents whose duty it was, by the rules and regulations of the road, to set the switch. If the servants of the defendants, for their own convenience, do not observe these rules, and shift the work belonging to one person upon another, the defendants are not liable to one of their own servants for an injury arising from such neglect, because it arises from a breach of duty by a fellow-servant. This shows no negligence of the defendants in hiring servants. The neglect of a fellow-servant was more likely to be known to the plaintiff than to the defendants. *King* v. *Boston & Worcester Railroad*, 9 Cush. 112. *Tarrant* v. *Webb*, 18 C. B. 797. *McDermott* v. *Pacific Railroad*, 30 Missouri, 115.

The third and fourth instructions requested should have been given. The defendants were only liable for negligence in employing a drunken servant, and the injury occasioned by such negligence ; but not for an injury occasioned partly by the drunken servant and partly by another servant's negligence. The drunken servant must be the sole cause of the injury. See *Copeland* v. *New England Marine Ins. Co.* 2 Met. 448 ; *Hayes* v. *Western Railroad*, 3 Cush. 270.

The fifth instruction requested should also have been given. The superintendent referred to was not a general superintendent,

but was a servant of the defendants. A portion of the defendants' servants must be employed through subordinates. Now, if it was reasonable and proper for the defendants to employ one servant to hire other servants, and he was negligent in discharging that duty, why is not the case clearly within the rule that the master is not liable to one servant for the default of another? The fact that the servant whose negligence causes the injury has different and more responsible duties to perform than the one injured, can certainly make no difference in the legal obligations of the defendants. *Albro* v. *Agawam Canal*, 6 Cush. 75. *King* v. *Boston & Worcester Railroad*, 9 Cush. 112. *Perkins* v. *New York Central Railroad*, 24 N. Y. 196, 213–216. *Bissell* v. *New York Central Railroad*, 25 N. Y. 442. *Thayer* v. *St. Louis, &c. Railroad*, 22 Indiana, 26. *Slattery* v. *Toledo, &c. Railroad*, 23 Indiana, 81. [See also other cases cited in the opinion.]

*T. H. Sweetser*, (*J. D. Howe* with him,) for the plaintiff.

GRAY, J.[*] The rules of law are now well settled, and were affirmed in the opinion already given in this case, and reported in 10 Allen, 236, that a servant, by entering into his master's service, assumes all the risks of that service, which the master, exercising due care, cannot control, including those arising from the negligence of his fellow-servants; but that the master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable to any of their fellow-servants for his negligence in this respect. This care he can and must exercise, both in procuring and in keeping or maintaining such servants, structures and engines. If he knows, or in the exercise of due care might have known, that his servants are incompetent, or his structures or engines insufficient, either at the time of procuring them, or at any subsequent time, he fails in his duty. For the management of his machinery and the conduct of his servants, he is not responsible to their fellow-servants; but he cannot avail himself of this exemption from responsibility, when his own negligence in not

---

[*] BIGELOW, C. J., did not sit in this case.

having suitable instruments, whether persons or things, to do his work, causes injury to those in his employ. He cannot divest himself of his duty to have suitable instruments of any kind, by delegating to an agent their employment or selection, their superintendence or repair. A corporation must, and a master who has an extensive business often does, perform this duty through officers or superintendents ; but the duty is his and not merely theirs, and for negligence of his duty in this respect he is responsible. To hold otherwise would be to exempt a master, who selected all his machinery and servants through agents or superintendents, from all liability whatever to their fellow-servants, although he had been grossly negligent in the selection or keeping of proper persons and means for conducting his business. In the case of a corporation, the president and directors, at least, cannot be deemed mere servants, but must be considered as representing the corporation itself.

The rule, as applied to this case as now presented, may be briefly stated thus : A railroad corporation is bound to provide proper road, machinery and equipment, and proper servants. It must do this through appropriate officers. If, acting through appropriate officers, it knowingly or negligently employs incompetent servants, it is liable for an injury occasioned to a fellow-servant by their incompetency. If it continues in its employment an incompetent servant after his incompetency is known to its officers, or so manifest that its officers, using due care, would have known it, such continuance in employment is as much a breach of duty and a ground of liability as the original employment of an incompetent servant.

It is true that it is no ground for charging a master for an injury to his servant, that it resulted from the negligent act of a superintendent or other servant of a higher grade than the plaintiff, and whose orders the plaintiff was bound to obey. *Albro* v. *Agawam Canal,* 6 Cush. 75. *Feltham* v. *England,* Law Rep. 2 Q. B. 33. But in each of these cases, as well as in *King* v. *Boston & Worcester Railroad,* 9 Cush. 112, one of the reasons on which the master was held not to be liable was the want of evidence of any neglect on the master's part in providing or

maintaining suitable agents or structures.   If the incapacity of
an agent or the insufficiency of a structure is known to the mas-
ter, or has existed so long or under such circumstances that, ex-
ercising due care, he ought to have known it, he is responsible.
Upon this ground it was held in *Snow* v. *Housatonic Railroad*,
8 Allen, 441, that a railroad corporation might be liable to one
of its servants for an injury caused by a want of repair which
had existed for two months in its road-bed, although it was the
immediate duty of another servant of the corporation to see
that the road-bed was kept in proper repair.   Similar decisions
have been made in many other states.   *Noyes* v. *Smith*, 28 Verm.
59.   *Keegan* v. *Western Railroad*, 4 Selden, 175.   *Ryan* v
*Fowler*, 24 N. Y. 410.   *Fifield* v. *Northern Railroad*, 42 N. H.
225.   *Hayden* v. *Smithville Manuf. Co.* 29 Conn. 548.   *Buzzell*
v. *Laconia Manuf. Co.* 48 Maine, 113.   Upon examination of
the cases to which we were referred as more narrowly limiting
the liability of the master, we do not find that they establish
any different rule.   We shall state only a few of the most
recent and important, and which upon first view might be
thought most nearly to support the defendants' position.

In *Wright* v. *New York Central Railroad*, 25 N. Y. 562, which
was an action by a brakeman on a railroad train for an injury
received by him on a collision with another train run by the
same corporation, and alleged to have been occasioned by the
negligence of the corporation in employing an incompetent en-
gineer and in ill arranging their time-tables, there was no evi-
dence that the arrangement of the time-tables or the incompe-
tency of the engineer contributed to the accident, or even that
he was incompetent.   In *Hard* v. *Vermont & Canada Railroad*,
32 Verm. 473, which was an action for an injury to an engineer
of the defendants from a defect in one of their locomotive en-
gines, it appeared, and was assumed in the defendants' request
for instructions which the court held should have been given, not
only that the defendants used all due care in the selection of
such engines and of proper and skilful persons to examine and
repair them, and furnished sufficient and proper materials for
that purpose ; but also that it was no part of the business of

their directors personally to inspect the condition of the engines, and that none of them either knew or suspected any defect in the engine which occasioned the accident; and the plaintiff did not contend, or offer any evidence, that the defendants or their directors ought to have known of the defect. In neither of these cases is any doubt cast upon the earlier decisions of the same courts, above cited.

In *Tarrant* v. *Webb*, 18 C. B. 797, the verdict for the plaintiff was set aside, because the jury had been instructed that the master was liable if the servant whose act caused the injury was incompetent, without requiring them to find whether the master knew, or, using due care, ought to have known, his incompetency ; thus in effect holding the master to warrant the competency of his servants, which he was clearly not bound to do. In *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429, the injury happened on a steamer while on a voyage, from a defect in machinery which had been in proper condition at the beginning of the voyage, and had been negligently suffered by the engineer of the vessel to get out of repair; and this the owners of the vessel could not have known. In *Waller* v. *Southeastern Railway*, 2 Hurlst. & Coltm. 102, in which the injury happened from the decayed condition of the treenails which fastened the chairs to the sleepers on the defendants' railroad, solely by reason of the neglect of duty of the " ganger " or head of the platelayers, a servant of the defendants, whose duty it was to keep such things in proper repair or condition ; in *Lovegrove* v. *London, &c. Railway*, 16 C. B. (N. S.) 669, in which the defect was occasioned by the negligence of the servants of the defendants in laying down a temporary tramway ; and in *Hall* v. *Johnson*, 3 Hurlst. & Coltm. 589, in which the injury was caused by the negligence of an " underlooker " in the mode of working a mine; it was not contended that those holding the relation of master towards the plaintiff, namely, the master himself in the last case, and the officers of the corporation in tne other two cases, knew of the defect or had been guilty of any neglect whatever; and the principal question argued was, whether the plaintiff and the person whose negligence was the immediate cause of the injury were

fellow-servants. And this was the only question reserved or decided in *Morgan* v. *Vale of Neath Railway,* 5 Best & Smith, 570, 736 ; *S. C.* Law Rep. 1 Q. B. 149.

In the case now before us, the jury were instructed that the plaintiff could not recover, without proving, 1st, that Shute was incompetent by reason of his habits of intoxication ; 2d, that his habits were so well known that the officers of the defendants knew or in the exercise of due care would have known them ; 3d, that Shute was intrusted with the care of the switch by the superintendent or some officer authorized to employ switchmen, or managed the switch habitually or so frequently that the officers, using due care, would know that he had the management of it ; 4th, that the plaintiff's injury was the direct and immediate consequence of the act of Shute ; 5th, that the plaintiff used due care, adapted to the circumstances in which he was placed.

As to the first of these requirements, no exception is taken to the instructions. It is indeed objected that the admission of evidence that Shute had the general reputation of being intemperate was erroneous. But such evidence was admitted, as the report expressly states, not for the purpose of showing that he was intemperate, but for the purpose of proving that his habitual intemperance, which there was other evidence tending to prove, was well known in the community. This fact was competent to show that the defendants, if they used due care, must have known that he was habitually intemperate, and therefore an unsuitable servant to be employed by them.

The second point which the plaintiff was required to prove was accurately defined, and the fifth instruction requested was rightly refused, for the reasons already given in discussing the general question of the defendants' liability.

The third and fourth points which the plaintiff was required to prove fully met and covered the first and second instructions requested.

The third and fourth of the instructions requested were also covered by the instructions given, except so far as they suggested that the defendants would not be liable for an injury to which the negligence of the incompetent switchman and the negligence

of another servant of the defendants contributed. In that respect, they do not seem to have been applicable to the evidence introduced or the position taken by either party at the trial, and were therefore immaterial. If they had been applicable to the state of facts in proof, we are not prepared to say that they ought to have been given. See *Cayzer* v. *Taylor*, 10 Gray, 274 ; *Eaton* v. *Boston & Lowell Railroad*, 11 Allen, 500.

The point taken at the argument, that the plaintiff could not recover because he either knew the habits and reputation of Shute, or was negligent in not learning them, was not taken at the trial, and cannot now be raised for the first time.

*Judgment on the verdict.*